**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW HALLER,<br><br>     Plaintiff,<br><br>     v.<br><br>CANCER GENETICS, INC.,<br>GEOFFREY HARRIS, EDMUND<br>CANNON, HOWARD MCLEOD, and<br>FRANKLYN G. PRENDERGAST,<br><br>     Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF**<br>**THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthew Haller ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Cancer Genetics, Inc. ("Cancer Genetics" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

C.F.R. § 240.14a-9, in connection with the proposed reverse merger between Cancer Genetics and StemoniX, Inc. ("StemoniX").

2.      On August 21, 2020, Cancer Genetics entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which CGI Acquisition, Inc. ("Merger Sub"), a wholly-owned subsidiary of Cancer Genetics, will merge with and into StemoniX, with StemoniX surviving the merger as a wholly-owned subsidiary of Cancer Genetics (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each outstanding share of StemoniX will receive approximately 0.5541 shares of Cancer Genetics common stock (the "Exchange Ratio"). Immediately following the Proposed Transaction, StemoniX shareholders will own approximately 78% of Cancer Genetics common while Cancer Genetics shareholders will own approximately 22% of Cancer Genetics common stock.

4.      On October 16, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction.

5.      The Registration Statement, which recommends that Cancer Genetics stockholders vote in favor of, among other things, the issuance of Cancer Genetics common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) the sales process leading up to the Proposed Transaction; (2) the Company's and StemoniX's financial projections, as well as the financial analyses performed by the Company's financial advisor, H.C. Wainwright & Co. ("Wainwright"), leading up to the execution of the Merger Agreement; and (3) potential conflicts of interest involving Wainwright.

6.      These material misrepresentations and omissions prevent the Company's

shareholders from making a fully informed voting decision relating to the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Proposed Transaction and/or Stock Issuance.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

10.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff is, and has been at all relevant times hereto, an owner of Cancer Genetics common stock.

12.     Defendant Cancer Genetics, through its subsidiary, vivoPharm, Pty Ltd., provides contract research services primarily focusing on studies to guide drug discovery and development programs in the oncology and immuno-oncology fields. The Company is incorporated in Delaware with principal executive offices located in Rutherford, New Jersey. The Company's

common stock trades on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol, "CGIX."

13.    Defendant Geoffrey Harris ("Harris") is Chairman of the Board of the Company.

14.    Defendant Edmund Cannon ("Cannon") is a director of the Company.

15.    Defendant Howard McLeod ("McLeod") is a director of the Company.

16.    Defendant Franklyn G. Prendergast ("Prendergast") is a director of the Company.

17.    Defendants Harris, Cannon, McLeod, and Prendergast are collectively referred to herein as the "Individual Defendants."

18.    Defendants Cancer Genetics and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

19.    On August 24, 2020, Cancer Genetics and StemoniX announced that they had entered into a definitive merger agreement. Pursuant to the merger agreement, Cancer Genetics will acquire all of the outstanding capital stock of StemoniX in exchange for a number of shares of its common stock which will represent approximately 78% of the outstanding common stock of Cancer Genetics, subject to certain adjustments and prior to the effects of certain financing, with the current equity holders of Cancer Genetics retaining 22% of the common stock immediately following the consummation of the merger. The press release states, in pertinent part:

**Cancer Genetics and StemoniX Sign Definitive Agreement to Merge**

August 24, 2020 08:00 ET | **Source:** Cancer Genetics, Inc.

**Combined Company Positioned to Offer Best-in-Class and
Innovative Drug Discovery Solutions**
RUTHERFORD, NJ and MAPLE GROVE, MN, Aug. 24, 2020 (GLOBE NEWSWIRE) -- **Cancer Genetics, Inc.** (the "Company") (Nasdaq: CGIX), and

StemoniX, Inc., today announced the entry into a definitive merger agreement. Cancer Genetics is a leader in drug discovery and preclinical oncology and immuno-oncology services. StemoniX, a private company, is a leader in developing high-throughput disease-specific human organoid platforms integrated with leading-edge data science technologies. Under the terms of the merger agreement, StemoniX will merge with a newly formed subsidiary of Cancer Genetics in an all-equity transaction. Upon shareholder approval, the combined company expects to remain listed on the Nasdaq Stock Market. StemoniX will retain its name and become a wholly-owned subsidiary of Cancer Genetics.

The transaction will position the combined company to harness the synergies between two critical modalities of drug discovery and development - advanced animal models and relevant human high-throughput organoid platforms. The resulting integration of scientific and technology-based expertise, skilled management teams, and ability to offer customers an end-to-end platform will de-risk and accelerate development of preclinical and clinical pipelines for biopharma partners as well as for the proprietary pipeline of the combined company. In combination, Cancer Genetics and StemoniX currently enjoy partnerships and R&D relationships with dozens of global pharmaceutical and biotechnology companies.

"The process of discovering and developing a new drug candidate takes years and comes with a price tag of hundreds of millions - or even billions - of dollars. However, we are at unique time in the drug discovery industry as the convergence of technological innovations in both biology and software will transform conventional workflows in time and accuracy. To convert the time-consuming and labor-intensive process of developing a drug for market, we now look to supplement traditional discovery and drug approval mechanisms to include humanized cell-based assays with artificial intelligence (AI) along with our core *vivo*Pharm business. Given that our strategy and approach are strongly aligned with those of StemoniX, we are pleased to have moved forward with this proposed transaction," stated Jay Roberts, Chief Executive Officer of Cancer Genetics.

"The pharma industry and society are at a critical pivot point. Viral pandemics and diseases lacking treatments require a new way of innovation. The proposed merger expects to expand our ability to engage with a larger audience of potential partners and expand our internal capabilities as we deliver on our mission to rapidly discover the safest and most effective therapeutics on behalf of our partners and our shareholders. The mission will stay consistent - allow scientists to quickly and economically conduct high-throughput toxicity and drug development studies in ready-to-assay plates containing functional microOrgans®," stated Ping Yeh, Chief Executive Officer of StemoniX.

## ABOUT THE TRANSACTION

Pursuant to the merger agreement, Cancer Genetics will acquire all of the outstanding capital stock of StemoniX in exchange for a number of shares of its

common stock which will represent approximately 78% of the outstanding common stock of Cancer Genetics, subject to certain adjustments and prior to the effects of the financing referred to below, with the current equity holders of Cancer Genetics retaining 22% of the common stock immediately following the consummation of the merger.

The Boards of Directors of both companies have approved the proposed merger, which is expected to close in the fourth quarter of 2020, subject to the approval of the shareholders of both Cancer Genetics and StemoniX, financing and other customary closing conditions.

H.C. Wainwright & Co. is acting as financial advisors to the Board of Directors of Cancer Genetics, and Lowenstein Sandler is acting as its legal counsel. Northland Securities, Inc. is acting as financial advisor to the Board of Directors of StemoniX and Taft, Stettinius & Hollister is acting as its legal counsel.

**ABOUT CANCER GENETICS**

Through its *vivo*Pharm subsidiary, Cancer Genetics offers proprietary preclinical test systems supporting clinical diagnostic offerings at early stages, valued by the pharmaceutical industry, biotechnology companies and academic research centers. The Company is focused on precision and translational medicine to drive drug discovery and novel therapies. *vivo*Pharm specializes in conducting studies tailored to guide drug development, starting from compound libraries and ending with a comprehensive set of *in vitro* and *in vivo* data and reports, as needed for Investigational New Drug filings. *vivo*Pharm operates in The Association for Assessment and Accreditation of Laboratory Animal Care International (AAALAC) accredited and GLP compliant audited facilities. For more information, please visit **www.cancergenetics.com**.

**ABOUT STEMONIX, INC.**

StemoniX is empowering the discovery of new medicines through the convergence of novel human biology and software technologies. StemoniX develops and manufactures high-density, at-scale human induced pluripotent stem (iPSC) cell-derived neural and cardiac screening platforms for drug discovery and development. Predictive, accurate, and consistent, these human models enable scientists to quickly and economically conduct research with improved outcomes in a simplified workflow. Through collaborations with drug discovery organizations, StemoniX tests compounds in-house, creates new cell-based disease models, and operationalizes custom human iPSC disease models at large scale for high-throughput screening. With leading-edge iPSC technologies and data science, StemoniX is helping global institutions bring the most promising medicines to patients. To learn more about how StemoniX products and services are accelerating discoveries, please visit **www.StemoniX.com**.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

20.      Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Cancer Genetics shareholders will be forced to make a voting decision on the Proposed Transaction and/or Stock Issuance without full disclosure of all material information.

21.      Among other reasons, and as described more fully below, this information is material in light of the Registration Statement's acknowledgment that "CGI . . . stockholders may not realize a benefit from the merger . . . commensurate with the ownership dilution they will experience in connection with the merger[.]"

22.      In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

23.      The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

24.      The Registration Statement provides that Cancer Genetics entered into numerous confidentiality agreements with potential merger partners. The Registration Statement provides that the Company's "standard form confidentiality agreement contains a 6-month standstill provision," and that some potential counterparties may still be bound by these standstill provisions.

25.      The Registration Statement, however, fails to disclose the relevant terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

26.      Without this information, the Company's shareholders may have the mistaken

belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable shareholder would want to know, prior to voting for or against Proposed Transaction and/or Stock Issuance, whether other potential buyers are or were foreclosed from submitting a superior proposal.

27.     The Registration Statement provides that, during the sales process, the Company received indications of interest and/or proposals from: (1) four potential purchasers of the Company's *vivo*Pharm business unit; (2) five potential acquirors with initial written proposals, received by November 25, 2019; (3) twelve candidate companies, as discussed during the Board's February 27, 2020 meeting; (4) six preliminary oral proposals received prior to July 2020; (5) two potential acquirors that provided unsolicited offers without entering into a confidentiality agreement; and (6) an additional twelve companies following the Board's February 27, 2020 meeting.

28.     While the Registration Statement provides some general and vague information concerning these proposals, it fails to adequately disclose the terms and values of all indications of interest and proposals between the Company and potentially interested counterparties. Accordingly, without this information, the Company's shareholders are unable to evaluate the merger consideration as compared to any competing proposals received by the Company.

29.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.   Material Omissions Concerning Relevant Financial Projections and Analyses**

30.     In connection with the Proposed Transaction, Cancer Genetics will issue common stock to StemoniX such that Cancer Genetics stockholders will only own approximately 22% of the combined company while StemoniX shareholders will own approximately 78%. But the

Registration Statement does not meaningfully offer shareholders a way to evaluate the fairness of the Proposed Transaction because the Registration Statement omits the financial projections for the Company and StemoniX, as well as a fairness opinion and financial analyses.

31.     The disclosure of the aforementioned projected financial projections and analyses is material because it would provide the Company's shareholders with an objective basis to project the Company's and the combined company's future financial performance, as well as assess the fairness of the deal.

32.     To that end, the Company's shareholders must be provided with: (1) any and all financial projections created by management or Wainwright or any financial advisor in assessing the Proposed Transaction, including projections and cash flows for the Company and StemoniX; and (2) any and all financial analyses conducted by Wainwright or any other financial advisor in connection with assessing the Proposed Transaction.[1]

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.  Material Omissions Concerning Potential Conflicts of Interest Involving Wainwright

34.     The Registration Statement omits material information concerning potential conflicts of interest involving Wainwright.

35.     The Registration Statement fails to disclose the terms of Wainwright's engagement by the Company, including: (1) the amount of compensation Wainwright has received or expects to receive in connection with its engagement; (2) the amount of Wainwright's compensation that

---

[1] Indeed, the Board considered "the potential value of the post-merger company with StemoniX following the merger and recent comparable reverse merger transactions in the life sciences industry" in determining to approve the Merger Agreement.

is contingent upon the consummation of the Proposed Transaction; and (3) whether Wainwright has performed past services for any parties to the Merger Agreement and/or their affiliates, including the timing and nature of such services and the amount of compensation Wainwright received or expects to receive for providing such services.

36.     The Registration Statement further fails to disclose the specific amount of compensation the Company paid to Wainwright in connection with the underwritten public offering of 1,363,637 shares of the Company's common stock per the Company's October 28, 2020 agreement with Wainwright.

37.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on the Board's recommendation for shareholders to vote in favor of the Proposed Transaction and/or Stock Issuance.

38.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

42.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and/or Stock Issuance.

43.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the false and misleading Registration Statement.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

49.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with or consummating the Proposed Transaction and any vote thereof, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants complete the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 23, 2020                    Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

*Counsel for Plaintiff*